# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **ISP.NET d/b/a IQuest Internet,** a Limited Liability Company of Indiana, | ) ) ) | |
| *Plaintiff and Counterdefendant,* | ) ) | |
| v. | ) ) | **Case No. 1:01-cv-00480-SEB-JMS** |
| **Qwest Communications International, Inc.,** a Delaware corporation, | ) ) ) | |
| *Defendant and Counterplaintiff.* | ) ) ) | |

## CONSENT JUDGMENT

The Court makes the following findings in connection with the settlement entered by the parties in this matter:

1.    Qwest is the owner of all right, title and interest in and to the mark QWEST for a wide variety of services in the field of telecommunications, including but not limited to, the electronic transmission of voice, data, and messages.

2.    Qwest has obtained the following federal service mark registrations, each for the provision of "[t]elecommunication services, namely the electronic transmission of voice, data, and messages":

| Mark | Reg. No. | Date of Reg. |
|---|---|---|
| QWEST | 1966694 | 04/09/1996 |
| QWEST COMMUNICATIONS | 1979485 | 06/11/1996 |
| QWEST | 2210992 | 12/15/1998 |



EXHIBIT

A

3.     The federal service mark registrations set forth in paragraph 2 are valid and subsisting and represent Qwest's exclusive right to use the mark QWEST in commerce.

4.     Since at least as early as 1982, and long prior to any use by IQuest of its mark and logo, Qwest, though its predecessors in interest, has continuously used the mark QWEST in interstate commerce in connection with telecommunication services, including without limitation, the electronic transmission of voice, data, and messages.

5.     The telecommunications services offered by Qwest and covered by the registrations set forth in Paragraph 2 specifically include internet access services, including without limitation, those provided by IQuest.

6.     Qwest's mark is inherently distinctive and famous and has been used, promoted and advertised extensively throughout the United States.  As a result, Qwest's mark has become well-known as a distinctive indicator or Qwest as the source of high quality services, and the mark has generated valuable goodwill for Qwest.

7.     The services offered under Qwest's mark are offered to the general public and to large and small businesses.  These consumers and potential consumers comprise virtually everyone in the United States.

8.     Qwest's mark has a high degree of recognition among consumers throughout the country.

9.     The service mark IQUEST is confusingly similar to the QWEST mark.

10.    The IQUEST mark so closely resembles Qwest's mark that use of the IQUEST mark in connection with internet access services is likely to cause consumers to be confused or mistaken as to whether Qwest is the source of those services.

11.   The provision of internet access services to consumers under the IQUEST mark unintentionally created a likelihood of confusion in that the public likely assumed that the internet access services offered under the IQUEST mark were in some way connected with and/or sponsored by or affiliated with Qwest.

12.   Therefore, the court ⌃ accepts the parties' stipulation that the QWEST mark has priority over the service mark IQUEST.  If after the entry of this order, IQuest continues to use the IQUEST mark without the express written consent of Qwest, such use would cause irreparable harm to Qwest and Qwest will be entitled to injunctive relief.

13.   Judgment is entered in favor of Qwest and IQuest's claims are dismissed with prejudice, each party to bear its own fees and costs.  This Court shall retain jurisdiction over this matter.

14.   This judgment resolves all claims and counter-claims between the parties.

IT IS SO ORDERED.


Dated:   07/20/2007

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

3